JOHN A. FOSTER, RECEIVER, &c., *against* JOHN TOWNSHEND AND OTHERS.

(Decided April 5th, 1875.)

A receiver of the real and personal estate of the husband, appointed in a divorce suit under the provisions of the Revised Statutes (1 R. S. p. 148, § 60, which declare that the court "may sequestrate the personal estate of the defendant, and the rents and profits of his real estate, and may appoint a receiver thereof"), does not acquire any title to the fee of real estate, but only the right to the possession thereof, and cannot maintain an action to set aside absolutely a conveyance made by the husband in fraud of his rights, though he may have it declared void as far as his right to the possession is concerned.

The rights and powers of receivers considered and explained, and the practice of the English courts in such cases examined, and the cases thereunder collated. Per Chief Justice CHARLES P. DALY.

APPEAL from a judgment of this court, at special term, entered on the decision of Judge ROBINSON, after a trial before him.

In his decision the judge found the following as matters of fact:

"1. That in November, 1867, the defendant Mary Carey

commenced her action for limited divorce in this court, against her husband, Thomas W. Carey, one of the defendants in this suit, and the defendant John Townshend appeared and acted as attorney for the said defendant Thomas W. Carey during the whole of the various proceedings therein, and had full knowledge thereof.

"2. That in said action an order was made on November 25th, 1867, requiring the said Thomas W. Carey to pay alimony for the support of his wife and children, at the rate of $20 a week, which alimony, save an inconsiderable portion, has never been paid.

"3. That upon proof that Thomas W. Carey was secretly disposing of his property, an order was made in said action on December 6th, 1867, enjoining him and his attorney from making any sale or transfer of his real estate, and the same was on the same day served on Thomas W. Carey.

"4. That on December 13th, 1867, an order was duly made in said action, directing an attachment to issue against the said Thomas W. Carey, and appointing John A. Foster receiver of his real and personal property, upon filing a bond, and said bond was duly filed on December 14th, 1867.

"5. That notwithstanding such proceedings, the said Thomas W. Carey, on December 18th, 1868, under the advice and with the aid and connivance of his said attorney, John Townshend, made and delivered a deed of conveyance of a lot of land on the northeast corner of First-avenue and Eighty-seventh street, in the complaint particularly described, of which said Thomas W. Carey was seized, and the same was recorded in the office of the register of the city and county of New York, in liber 1066 of Conveyances, page 658, the 21st day of the same month.

"6. That at the time of the making and recording of said deed, the said John Whyte had full knowledge of the existence of the suit for divorce pending between Mary Carey and Thomas W. Carey, and of the injunction order therein granted on December 6th, 1867, and of the order therein appointing a receiver, and was not a purchaser in good faith without notice of equitable claim of the said Mary Carey.

"That such conveyance from said Thomas W. Carey was made

to John Whyte, and accepted by him, in order to defeat the right of the said Mary Carey to enforce the payment of her alimony out of the said estate of her husband, and in fraud of her rights and of the court.

"7. That upon the said conveyance being made, the said John Whyte made and delivered to Thomas W. Carey the mortgage for one thousand dollars mentioned in the complaint, and said Thomas W. Carey made and delivered to the said John Townshend the assignment thereof in the complaint mentioned, together with assignments of other personal property.

"8. That the said mortgage and assignment thereof were not made in good faith, but the same were made with intent to hinder and defraud the said Mary Carey in the enforcement of her equitable rights, and was part of a plan and confederacy of the said Thomas W. Carey, John Whyte, and John Townshend, entered into and carried out for the purpose of secreting and disposing of the property of the said Carey, with a view of defeating the said Mary Carey in her rights, and in fraud of the said Mary Carey and of this plaintiff.

"9. That the said John Whyte died in 1871, leaving the last will and testament in the complaint mentioned, by which he assumed to devise the said property to the defendants Alexander Whyte and Elizabeth Whyte, both of whom are aliens, and the defendants McMullen and Osterholt, his executors, with power to sell his real estate, to whom letters testamentary have been granted as in the pleadings alleged.

"10. That on or about June 22d, 1869, the said John Whyte made and delivered to the defendant Sarah A. Housman a bond for $2,000, secured by a mortgage covering the property described in the complaint, and the money derived therefrom was applied by the said John Whyte to the discharge of other liens which had been created by Thomas W. Carey upon the same property.

"That such new and substituted lien was taken in good faith by the defendant Sarah A. Housman, and without notice of the equities of the plaintiff, and is still a valid lien on the property.

"11. That at the time of the making and delivery of the said

bond and mortgage to Sarah A. Housman, there were existing upon the said property, in addition to the $1,000 mortgage assigned to John Townshend as aforesaid, the following liens which had been created, or suffered to be created, by the said Thomas W. Carey, viz.: a mortgage to Azel Graham, dated December 6th, 1867, and recorded December 6th, 1867, for $1,500; several judgments recovered against Thomas W. Carey for about $371 23, as set forth in the answer of the defendants McMullen and Osterholt. These liens were paid or settled for out of the moneys coming to John Whyte, either by himself or by John Townshend, who represented Thomas W. Carey in the transaction.

"12. That the mortgage of Thomas W. Carey to Azel Graham, which was a lien upon the said land, was also a lien upon other land of Thomas W. Carey in Alleghany county, which land, on April 6th, 1870, and subsequent to the injunction and appointment of a receiver in this suit, had been mortgaged by Thomas W. Carey to Mary N. Townshend, the wife of John Townshend, and had thereafter been sold and bought in by the said John Townshend, in the name of his said wife; and a part of the intent of the said John Townshend, and the effect of the satisfaction of the Graham mortgage was to remove the lien thereof from the property so held by his wife."

Upon these facts Judge ROBINSON found as matters of law:

"1. That by the appointment of the plaintiff as receiver aforesaid, he became vested with the real and personal estate of the said Thomas W. Carey, in trust, for the securing the payment of alimony in this suit to Mary Carey, so far as the court in any proceeding thereon had power to sequestrate the property for the satisfaction of alimony under its decree, and has the power of a common-law receiver to collect and receive the rents, issues, and profits of said premises, so far as may be necessary for the enforcement of the equitable rights of the said Mary Carey.

"2. That the plaintiff, by virtue of the provisions of the act of 1858, ch. 314, is authorized to maintain this action, and disaffirm and treat as void the acts aforesaid of the said Thomas

W. Carey, John Whyte, and John Townshend, save the said mortgage to Sarah A. Housman.

"3. That neither the said John Whyte nor the said John Townshend acted in good faith, or without notice of the equitable claims of Mary Carey, as wife and creditor upon the estate of her husband for such alimony, and the several conveyances, mortgages, and assignments to them before mentioned were in fraud of her rights, and void as against the aforesaid equitable claim of the said Mary Carey upon the premises in the complaint mentioned, and the title thereto, so as aforesaid acquired by the plaintiff as receiver, should be adjudged void as against this plaintiff.

"4. That the defendant Sarah A. Housman, having acquired in good faith a lien on said premises, for the payment of the amount secured by the said mortgage, is entitled to retain the same, except as against the equitable claims of the plaintiff; she should be adjudged to have recourse first to the other and adjoining lot included in said mortgage to her, and exhaust her remedy against the same, before resorting to the premises described in the complaint.

"5. That the said John Whyte nor his representatives are not entitled to be credited with the moneys paid in satisfaction of the mortgage to Azel Graham, or the judgments against Thomas W. Carey.

"6. That the plaintiff is entitled to a decree in this cause adjudging as void, and directing the surrender and cancellation of the conveyance from Thomas W. Carey to John Whyte, and the mortgage from John Whyte to Thomas W. Carey, and the assignment thereof from Thomas W. Carey to John Townshend, which several deeds, mortgages, and assignments are set forth in the complaint, and a judgment for his costs against the defendant John Townshend, and the defendants David McMullen and Ehler Osterholt, as executors of John Whyte, deceased, together with an extra allowance of $250, and for a perpetual injunction against the said John Townshend, restraining him from foreclosing the said mortgage, and directing and requiring the said John Townshend to make, execute, and deliver an assignment thereof to the plaintiff in this suit, and restraining the

defendants David McMullen and Ehler Osterholt, as executors, from making any conveyance of or charge upon said land; and the said decree, also to provide that the complaint be dismissed as far as relates to the defendant Sarah A. Housman, with her costs to be taxed."

Judgment was entered in accordance with this decision, and therefrom the defendants John Townshend and Alexander and Elizabeth Whyte appealed to this court at general term.

*John Townshend*, appellant in person.

*Foster & Thompson* and *John N. Whiting*, for appellants Whyte.

*Ward, Jones & Whitehead*, for respondent.

CHARLES P. DALY, Chief Justice.—Carey had been required, by an order of the court, to pay alimony for the support of his wife and the maintenance of his children. Upon proof that he was secretly disposing of his property, both he and his attorney were enjoined from making any sale or transfer of his real estate, and subsequently, upon Carey neglecting to pay alimony as ordered, an attachment was issued against him for contempt, and the plaintiff was appointed receiver to take possession of Carey's real and personal property, and hold it until he should give security for the payment of the alimony.

This appointment was made in pursuance of the Revised Statutes, vol. 1, p. 148, § 60, which authorizes the court, in such a case, to sequester the husband's personal estate, and the rents and profits of his real estate, to appoint a receiver and to cause such personal estate and the rents and profits of such real estate to be applied towards the allowance for the wife, and towards the maintenance of the children, from time to time, as shall seem just and reasonable.

This statutory provision is in effect the same power which courts of equity previously exercised in the sequestration of personal and real estate, to enforce the performance of their orders and decrees, and in the disposition of the questions raised in this case, it will be necessary, first, to understand what was

the operation and effect of a sequestration of a defendant's personal and real property in equity. It was a seizing and taking hold of the property, real or personal, or both, by sequestrators appointed by the court, and holding it until he performed the act directed to be done. It was in equity very nearly what the writ of *levari facias* was at common law; the goods and chattels were taken into possession, and, with the permission of the court, might be sold, and the lands were seized and held, the rents and profits being collected by the sequestrators, and applied or allowed to accumulate, or were otherwise disposed of as the court might direct (*Attorney-General* v. *Coventry*, 2 P. Wm. 307; *Bligh* v. *Darnley*, 1 P. Wm. 621; *Wharham* v. *Broughton*, 1 Ves. Sr. 179, 184; *Desbrough* v. *Crumby*, 1 Barn. 212; id. Bunb. 272; *Whyte* v. *Wright*, 3 Ves. 22; *Mitchell* v. *Draper*, 9 Ves. 208; *White* v. *Geraerdt*, 1 Edw. Ch. R. 336, 340, 341; Daniell's Chancery Practice, 1254 to 1276; 2 Tidd's Practice, 993, 1042, 9th Lond. ed.). In respect to the real estate, the right extended only to the possession; to the sequestering or receiving of the rents and profits; to the making of leases, &c., &c., the legal estate, in the language of Lord Chancellor Cowper, "remaining, in every respect, as before" (*Attorney-General* v. *Coventry*, 2 P. Wm. 307). Lord Hardwicke said, in *Hyde* v. *Greenhill* (1 Dick. 107), that a sequestration covered the personal estate and the rents and profits of the real estate, *but not the land*, showing that the court, under a sequestration, never assumed the power of disposing of the land, which further appears from *Sutton* v. *Stone* (1 Dick. 107), in which an application was made to sell a leasehold estate which had been sequestrated, and Lord Loughborough held that it could not be done. "Who," said he, "is to make out the title?"

After the appointment of the receiver and the sequestration of Carey's real and personal property for the enforcement of the order for alimony and maintenance, Carey, though forbidden by injunction to do so, and though in contempt for not obeying the order, made a conveyance of a lot of land which he had in this city, to one John Whyte, for $4,000, subject to a mortgage to one Azel Graham for $1,500, and Whyte, at the same time, executed a mortgage upon the lot to Carey, for the sum of

$1,000 and interest; that being regarded as equivalent to the value of Carey's wife's right of dower in the land, which mortgage was made payable upon her death, or upon the release of her dower right, and Carey afterward assigned this mortgage to John Townshend, his lawyer, for the nominal consideration of one dollar, which assignment purports to have been made to secure moneys advanced and to be advanced by Townshend to Carey, and for legal services rendered, and to be rendered, by him to Carey.

The judge, at the special term, has found that both the conveyance by Carey to Whyte, and the assignment of the mortgage by Carey to Townshend, were fraudulent. He finds that at the time of the conveyance by Carey to Whyte, that Whyte knew of the existence of the divorce suit, of the injunction forbidding Carey to make any conveyance of his property, and of the appointment of the receiver, and that the conveyance was made by Carey and accepted by Whyte, in order to defeat the right of the wife to enforce the payment of her alimony out of the estate of her husband, and that the mortgage was made and assigned to Townshend, to hinder and defraud the wife in the enforcement of her equitable rights in the divorce suit, and was part of a plan or confederacy between Carey, Whyte and Townshend, for the purpose of secreting and disposing of the property of Carey, in fraud of the wife and of her rights.

The judge was fully warranted in finding upon the evidence, that the conveyance of the lot by Carey to Whyte, and the mortgage by Carey to Townshend were made with this intent. Whyte knew of the injunction and of the appointment of the receiver. He discussed both matters in the presence of the witness Henry W. Carey. He was an intimate friend of Carey, and co-operated with him in getting Carey's stock of goods removed from the latter's store in this city to his, Whyte's store, in Jersey City. Townshend was Carey's lawyer in the divorce suit, and prepared both the deed and the mortgage. He admitted when examined, that he knew that Carey was enjoined by the court from transferring any of his property. He was asked why he allowed his client, under such circumstances, to make a conveyance of his property, and he answered that he

considered that Carey had the legal right then to convey it if he chose to *take the chances* of the punishment that the court might inflict upon him for a disobedience of the injunction. He testified that he took the mortgage without any consideration whether it was right or wrong. That Carey, who was in want of money, solicited him to take it. That if it was illegal, he was sorry for it; but he supposed then and still supposed, that Carey had a right to dispose of his property and take the consequences. It further appeared that Carey assigned to Townshend the lease of his store in this city; that he gave Townshend's wife a mortgage upon real estate which he had in Alleghany county, which mortgage Townshend foreclosed, and that Townshend brought a suit for the foreclosure of the mortgage assigned to him by Carey, which suit was still pending; so that it would seem that all Carey's property was transferred to Townshend, Townshend's wife, and to Whyte. These being the facts, there can be no reasonable doubt, upon the evidence, that the conveyance of this lot to Whyte and the mortgage upon it to Townshend, were made with the intent upon the part of Carey, Townshend and Whyte, of preventing the order for alimony and maintenance being enforced by the sequestration of this part of Carey's real property.

The judge has found that the plaintiff, upon being appointed receiver, became vested with the real and personal estate of Carey in trust for securing the payment of the alimony, so far as the court had power to sequestrate his property for the satisfaction of the alimony, and that the plaintiff had the power to collect the rents, issues and profits of the premises, as far as might be necessary for the enforcement of the equitable rights of the wife.

This was not finding that the legal estate was in the plaintiff, as the appellants have argued; but simply that he became vested by his appointment, with the right to the immediate possession and as incident to it, the right to the rents and profits and the right to lease the property, with the permission of the court, that it might yield rents and profits to be applied to the payment of the alimony and the maintenance (*Neale* v. *Bealing*, 3 Swans. 304, note *c*; *Haney* v. *Haney*, 2 Ch. Rep. 49; *Morris*

v. *Elme*, 1 Ves. Jr. 139; Id. 165; Jeremy's Eq. Jurisp. 252, 253; Story's Eq. Jurisp. 833, 833 *a*).

The plaintiff being in possession of the real estate by the sequestration of it, his possession could not be disturbed without the leave of the court; for his possession is the possession of the court (*Angel* v. *Smith*, 9 Ves. 336; *Lord Pelham* v. *The Duchess of Newcastle*, 3 Swans. 290 *a*; *Sea Ins. Co.* v. *Stebbins*, 8 Paige, 565; Story's Eq. Jurisp. 833 *a*; Daniell's Chancery Practice, 1267, 2d Eng. ed.). A fraudulent alienation of the property can have no effect upon a sequestration, and this applies even to a voluntary conveyance executed before the sequestration, for the purpose of defeating it (*Coulson* v. *Gardiner*, 2 Ch. Cas. 42; 3 Swans. 279, note *a*; *Cook* v. *Cook*, Com. R. 712; *Marquis of Caermarthen* v. *Howson*, 3 Swans. 301, note *a*; *Withan* v. *Bland*, Id. 277, note *a*; *Bird* v. *Littledale*, Id. 299, note *a*; *Hamblin* v. *Ley*, Id. 301, note *a*); and it is said that where the purchase is made after the decree, it will not affect the sequestration, although the purchaser had no notice of the decree (*Squib* v. *Snelling*, 2 Ch. Cas. 47; *Cook* v. *Cook*, Com. R. 713). It will not affect valid rights previously acquired, and even a conveyance to an innocent purchaser for value made afterward will be protected, and when any right or title is claimed adverse to the sequestration, the practice is for the claimant to come into the court and be examined *pro interesse suo*, and if it appear to the satisfaction of the court, that the claimant has a superior right or title, the sequestration will be discharged as against him (*Att'y Gen'l* v. *Coventry*, 1 P. Wm. 309, note 1; *Wharam* v. *Broughton*, 1 Ves. 180; Daniell's Chancery Practice, 1269, 1270, 1271); and though it was formerly questioned (*Kaye* v. *Cunningham*, 5 Mad. 406), it appears now to be settled, that the party for whose benefit the sequestration has been ordered may require the party claiming an adverse right or title to come in and show cause why he should not be examined *pro interesse suo* (*Johnes* v. *Cloughton*, Jac. 573; *Brookes* v. *Greathed*, 1 J. & W. 178; *Hamlyn* v. *Lee*, Seton on Decrees, 413; Daniell's Chancery Practice, 1270, 1271). But though the court will interpose to prevent any disturbance of its receiver or sequestrator in his possession under

the order for a sequestration, it generally refuses to interfere against the legal title (*Tyson* v. *Fairclough*, 2 Sim. & S. 142 ; Jeremy's Eq. Jurisp. 252); and when applied to, will either examine the title itself and discharge the sequestration as against it, or will leave the party claiming a right to the possession under a superior legal title to enforce his right at law (*Angel* v. *Smith*, 9 Ves. 335 ; *Dixon* v. *Smith*, 1 Swans. 457; *Att'y Gen'l* v. *Coventry*, 1 P. Wm. 306; *Empringham* v. *Short*, 3 Hare, 461 ; Gilb. For. Rom. 81).

The judge further held that the plaintiff, as receiver, was entitled to a decree adjudging the conveyance from Carey to Whyte, and the mortgage and the assignment of it to be void, and directed that they should be surrendered and canceled. This the court had no power to do. I am not aware that in any case a court of equity has ever assumed to dispose of the real estate to enforce a compliance with its decree by a sequestration. The cases cited show that in England the court has never gone further than to take possession of the real estate, that the rents and profits might be applied under the decree; but whether any court of equity has or not, it is very clear that it cannot be done under our Revised Statutes in a case like the present, the statute giving the right only to sequester the rents and profits. This in no way affects the legal title, or the transfer of it. It gives, by the sequestration, a right to the possession, and this being, as I understand, a vacant lot, the plaintiff, as receiver, has the constructive possession of it. The conveyance to Whyte in no way affected the plaintiff's right to the possession. He could have applied to the court for liberty to lease the lot, that it might yield rents and profits, and if Whyte, or his grantees or heirs, assumed in any way, by virtue of the conveyance, to interfere with or disturb the plaintiff's right of possession, or any of the rights accompanying it, the court would interpose and enjoin him or them from doing so, and might proceed against them as for a contempt (*Angel* v. *Smith*, 9 Ves. 336). Though the conveyance was of no effect as against the sequestration, it was good and passed the legal title as between Carey and Whyte. Courts of equity order conveyances to be surrendered up and canceled as between the parties to

them, where the conveyance has been obtained by a fraud practiced by the one party upon the other. But where the grantor and the grantee are co-operating parties in a fraud, the conveyance having been executed and delivered with the fraudulent intent of defeating third parties, such as creditors or others, of their just rights or remedies, the rule is otherwise. In such a case, and it is this case, the conveyance is good between the parties to it. The rule is thus stated by Story: "Although voluntary conveyances are or may be void as to existing creditors, they are perfect and effectual as between the parties, and cannot be set aside by the grantor if he should become dissatisfied with the transaction. It is his own folly to have made such a conveyance. They are not only valid as to the grantor, but also as to his heirs, and all other persons claiming under him in privity of estate with notice of the fraud. A conveyance of this sort, it has been said with great truth and force, is void only as against creditors, and *then only to the extent in which it may be necessary* to deal with the conveyed estate for their satisfaction. To *this extent, and to this only*, it is treated as if it had not been made. To *every other purpose it is good*. Satisfy the creditors and the conveyance stands" (Story's Eq. Jurisp. § 371), and courts of equity moreover, where they do interfere and direct a conveyance or other instrument to be canceled, do so upon such terms as may be equitable and just, such as the party's returning what he has received, or making adequate compensation where it is equitable, or where they relieve against usurious contracts, or instruments tainted by usury, by requiring the borrower to pay what is really due, for unless his complaint contains that offer it will be dismissed, and where both parties are *in pari delicto*, as in this conveyance by Carey to Whyte, they do not interfere, but leave both parties in the position in which they have voluntarily placed themselves (Story's Eq. Jurisp. §§ 300 to 303, and 692 to 703). But a very different result is produced in this case, by directing the conveyance and the assignment to be delivered up and canceled. For all that appears, Whyte may have paid the full consideration of the property. It purports to have been conveyed for the sum of $4,000, subject to a mortgage of $1,500, and for all that appears, Whyte

may have paid this amount less the $1,500 mortgage and the $1,000, the estimated value of the wife's dower interest. Now what becomes of this payment? Is the loss to be imposed upon the one wrong-doer and the other to have the benefit of it, especially where it is unnecessary? for this conveyance may have been fraudulent as against creditors, and fraudulent as against the wife's equitable rights in the action for the divorce, but as respects her, it could in no way affect her rights in that action; for Whyte's legatees, or the assignees of the mortgage made by him, can acquire no enjoyment of the property conveyed by Carey to Whyte, without coming into the court that ordered the sequestration, and obtaining, if entitled to it, the possession and enjoyment, by the authority and permission of the court (*Angel* v. *Smith*, 9 Ves. 336; *Cook* v. *Cook*, Com. 712). Nor does it affect the question that Carey was under injunction when the conveyance was made, and Whyte knew it. Carey is liable to punishment for disobeying the injunction, but that would not, as between Carey and Whyte, affect the validity of the transfer. It would not, as between them, make the conveyance illegal and void. The sequestration moreover, in certain cases, does not merely abate, but falls altogether when the defendant dies, the process being generally personal, and where the decree is, as in this case, for the payment of a personal demand which does not arise out of covenants or some duty connected with the land, it can be revived only against the personal representatives, and not against the heir (Daniell's Chan. Pr. p. 1274, and cases cited therein). It would, therefore, be a question in this case, whether it would not fall altogether as respects the land, by the death of the defendant, for, as Lord Hardwicke said, it does not cover the land, and it certainly would as to the alimony, by the death of the wife, or as to the maintenance, upon the children's arriving at their majority, and the legal title being in the legatees of Whyte, they would then be entitled to the possession, and Townshend would then be entitled to foreclose his mortgage, for there would then be nothing to obstruct it.

The act of 1858, ch. 314, empowers a receiver for the benefit of creditors or others interested in the estate or property

held by the receiver in trust, to disaffirm, treat as void, and resist all acts done, transfers or agreements made in fraud of the rights of any creditor, including themselves and others interested in the estate or property held in trust. Under this act, and indeed before it, by the authority of the cases I have cited, the plaintiff, as receiver, had the right to compel Townshend and the executors and legatees of Whyte to come into the court, that the conveyances, the mortgage and the assignment of it should be declared void and of no effect as against the sequestration ; but to order the conveyance to be surrendered up and canceled, is to declare that as between Carey and Whyte it is illegal and void, which was not necessary to protect and enforce the wife's equitable rights, which, moreover, the court had no authority to do under this provision of the Revised Statutes, and which, so far as I can ascertain, has never been done by courts of equity upon the sequestration of real estate for the enforcement of their decrees. If the conveyance of the legal estate was good as between Carey and Whyte, then the mortgage from Whyte to Carey was equally good, as well as the assignment of it to Townshend. The attempt of Townshend to foreclose the mortgage is quite another matter. That he cannot do without the permission of the court, by whom the order for the sequestration was made. Lord Eldon, in *Anon.* (6 Ves. 287), said that where there was a sequestration, no person would be permitted to bring an ejectment, or *take any other proceeding*, *without the leave* of the court, and that whoever did so would be guilty of a contempt ; and again, in *Angel* v. *Smith* (9 Ves. 335), that it was a contempt of the court to disturb sequestrators ; that a party, even by an adverse title, could not claim in any other way than by coming to be examined *pro interesse suo ;* that where the sequestrator is in possession under the process of the court, his possession cannot be disturbed without leave of the court ; that his possession is the possession of the court ; that the court will not permit itself to be made a suitor in a court of law, being itself competent to pass upon the rights of the claimant, and that were it otherwise it would be putting it in the power of the party against whom the sequestration was ordered, to harass the sequestrator, so as to make it impossible

for the court to execute its duty, which is illustrated in the present case by the assignment by Carey, in violation of the injunction to his lawyer, Townshend, who knew of the injunction, and by the attempt of Townshend to get the property by the foreclosure of the mortgage for the non-payment of interest, or whatever advantages to him and detriment to the receiver might arise from the foreclosure of the mortgage and the sale of the property under the foreclosure.

In my opinion the decree should have gone no farther than to declare the conveyance void and of no effect as against the sequestration, and the plaintiff's rights as an officer of the court under it, and the enjoining of Townshend from foreclosing the mortgage whilst the property was sequestrated for the enforcement of the order for the payment of the alimony, and for the maintenance of the children, and upon the appeal the decree in my opinion should be so modified.

LOEW and JOSEPH F. DALY, JJ., concurred.

Judgment modified accordingly.